*625
OPINION

This case concerns whether district grazing committees and the Office of Hearings and Appeals (OHA) have jurisdiction to hear a dispute over fencing of an allotment within the Reservation. The Court vacates the dismissals of the case by OHA and the District 7 Grazing Committee (Grazing Committee) and remands with instructions for the Grazing Committee to hear the fencing dispute.
I
The relevant facts are as follows. The United States holds an allotment in trust for Appellees Eulah Morris, Maureen Williams, and Christian Morris (Appel-lees). The allotment is located within the Navajo Reservation in Arizona. Appellants Harvey and Susan Gishie (the Gi-shies) live on the allotment. According to the record, Susan Gishie is either Eulah Morris’ half-sister or clan sister. Appel-lees planned to fence the allotment, and received permission from the Bureau of Indian Affairs to build the fence. The Gishies sought to stop the fencing by filing a complaint with the Grazing Committee. The Grazing Committee dismissed the complaint, stating it had no jurisdiction over an allotment, and the Gishies filed an appeal with OHA. OHA remanded the dispute back to the Grazing Committee with instructions to hold a hearing on whether it had authority to hear allotment fencing disputes. The Grazing Committee did not hold a hearing, but again dismissed the dispute, and the Gishies again appealed to OHA. OHA dismissed the appeal, ruling that it had no authority to hear the dispute. The Gishies then filed this appeal. The Court held oral argument on March 11, 2008 at the University of Colorado Boulder Law School.
II
The sole issue in this case is whether a district grazing committee and the Office of Hearings and Appeals can hear a dispute over fencing of an allotment within the Reservation.
III
This case turns on statutory interpretation. The Court reviews such a legal issue de novo with no deference to OHA’s decision. In re Grievance of Wagner, 7 Am. Tribal Law 528, 530, 2007 WL 5893637, *2 (Nav.Sup.Ct.2007). This case is not about whether the Navajo Nation generally has authority to resolve fencing disputes on allotments, see Benally v. John, 4 Nav. R. 89, 41-44 (Nav.Ct.App.1983), but whether the Navajo Nation Council has empowered district grazing committees and OHA to hear such disputes. The answer depends on this Court’s reading of several sections of Title 3 of the Navajo Nation Code. Based on that reading, the Court concludes that district grazing committees may hear such disputes.
District grazing committees and OHA have jurisdiction only over certain types of disputes. They may only act when authorized by the Council. See In re Grievance of Wagner, 7 Am. Tribal Law at 530-31, 2007 WL 5893637, **2-3 (Nav.Sup.Ct.2007); Bedoni v. Navajo Nation Office of Hearings and Appeals, 4 Am. Tribal Law 672, 2003 WL 25794141, *1 (Nav.Sup.Ct.2003). The Council clearly authorizes OHA to hear fencing disputes on appeal from a recommendation of a district grazing committee. 3 N.N.C. § 176 (2005). The question here is whether the Council authorized district grazing committees to hear fencing disputes concerning allotments.
*626 Generally, lands within the Nation are held in trust by the United States for the Navajo Nation as a collective entity. Individual Navajos may possess interests in such lands, through customary use, or through modern interests such as homesite leases, business site leases, or land use permits. See 3 N.N.C. §§ 151, 211; 5 N.N.C. §§ 2301, et seq.; 16 N.N.C. §§ 801, et seq. (2005); In re Estate of Wauneka, Sr., 5 Nav. R. 79, 81 (Nav.Sup.Ct.1986) (describing customary use). However, as part of the allotment program authorized by the General Allotment Act, also known as the Dawes Act, Act of February 8, 1887, 24 Stat. 388, the United States set aside lands both within and outside the current Navajo Reservation in trust for individual Navajos, and not for the Nation itself. Did the Council intend that grazing committees hear fencing disputes concerning allotted land?
The Council has passed several different provisions over the years concerning fencing that have been codified in Title 3 of the Navajo Nation Code. Chapter 5, Subchap-ter 1, Section 713 states that “[fjavorable recommendation” by a grazing committee and from the Bureau of Indian Affairs Superintendent is required before “any fences” can be placed “in non-agricultural areas.” However, Section 704, a general provision applicable to all of Subchapter 1, including Section 713, states that “ft]he regulations in this chapter do not apply in individually owned allotted lands within the Navajo Nationf.]” (emphasis added).[1] The Gishies rely on Section 171(B), in Chapter 1 of Title 3, which empowers grazing committees to approve fencing on “Navajo Nation land.”[2] Another section, Section 172, outlines procedures for a grazing committee to follow “whenever any lands are proposed to be fenced.” (emphasis added). A wholly separate sub-chapter and article govern lands in the Eastern Navajo Agency, and empowers district lands boards to “arbitrate land disputes,” and refer such unresolved disputes to the Eastern Navajo Joint Land Board. 3 N.N.C. § 237(C) (2005). Further, under the Off-Reservation Grazing Code, Chapter 5, Subchapter 7, fencing on land within the Eastern Navajo Agency, including allotments, must be approved by the district land board. See 3 N.N.C. § 943 (2005); Castillo v. Charlie, 7 Nav. R. 181, 182-83 (Nav.Sup.Ct.1995).
The parties and OHA disagree on the effect of these various provisions. When it dismissed the case, OHA relied on Section 704. It concluded that the empowerment of district grazing committees in Section 713 did not apply to allotments, based on the explicit limitation in Section 704. The Gishies alleged to OHA and allege here to this Court that Section 171(B) is independent authority for district grazing committees. They argue that the term “Navajo Nation lands” is sufficiently broad to include allotments. OHA rejected the Gi-shies’ argument, concluding Section 171(B) did not separately require district grazing committee approval of allotment fences.
*627 Title 3, like other titles of the Code, includes multiple provisions on the same topic originating from various resolutions of the Council. The multiple sections on fencing scattered in Title 3 make it difficult to understand the Council’s intent, as one section explicitly excludes allotments, another uses the undefined term “Navajo Nation land,” and still another uses “any lands.” One reading supports the Gishies, as Sections 171 and 172 do not include the explicit exclusion of allotments found in Section 704, and Section 704 does not apply to those sections. Section 171 uses the term “Navajo Nation land,” which could mean any land within the exterior boundaries of the Nation, or could mean any lands owned by the Navajo Nation. One meaning would include allotments, while the other would exclude them. There is an ambiguity, and the Court must look to the purpose behind Title 3’s fencing provisions to decide this case.
Given that fencing on all lands, including allotments in the Eastern Navajo Agency, are subject to some local Navajo board or committee’s approval, the Court concludes that, read together, the purpose of the various provisions is to deal with fencing within the Nation comprehensively.[3] To foster a uniform, predictable system of regulating fencing within the Reservation, this purpose is facilitated by requiring district grazing committee approval of allotment fencing within the Reservation. Under this analysis, elected officials within local communities may hear and decide disputes when land owners propose to fence their land off from other users. Such fencing affects not just the parcel proposed to be fenced, but affects all other surrounding land users.[4] Livestock may not pass through the area, roads may be blocked for those both within and outside the fenced land, and activities such as ceremonies may be negatively affected by blocking access within and across the allotment. The comprehensive nature of the fencing regulations in Title 3 reflects these concerns, and to fulfill the purpose of Title 3, the provision of district grazing committee oversight and approval authority must include authority over allotments within the Navajo Reservation. An opposite reading would mean that allotments within Arizona, of all lands within the Nation, would be free from grazing committee or board oversight. That cannot have been the intent of the Council, as it would single out a group of Navajo land users for different treatment, and would disrupt a land use system that fosters community notice and cooperation. OHA then erred when it dismissed the case.
IV
Based on the above, the Court REVERSES OHA’s decision, and REMANDS the case with instructions to OHA to send the case back to the district grazing committee for resolution of the fencing dispute.

. The term "chapter” as used in Section 704 must mean “subchapter,” as other subchap-ters in Chapter 5 of Title 3 deal with separate subjects and different areas of land, including a subchapter covering the Eastern Navajo Agency "off-reservation” area. See 3 N.N.C. § 931 et seq. (2005).

. Curiously, Section 171(B) is codified in a subchapter concerning small irrigation projects. See 3 N.N.C. § 151 (2005). Though the codification notes cite Advisory Committee Resolution No. ACS-144-59, which approved duties and responsibilities of land boards, as the source of Section 171(B), the resolution itself does not include that provision. It is then unclear when and in what resolution Section 171(B) originated.

. There are two other categories of Navajo lands subject to fencing, but that parties did not assert whether fencing on those lands are relevant to the instant issue. These lands are the Navajo Partition Lands and the “New Lands,” which are covered by separate parts of the Code of Federal Regulations. See 25 C.F.R. Parts 161 and 700.

. The record in this case shows that at least two sides of the allotment are contiguous to Navajo trust lands. Thus, if these two sides were fenced, in effect, Navajo trust land is also being fenced.